

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DR:DKA
F. #2026R00046

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 4, 2026

By Email and ECF

The Honorable Marcia M. Henry
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:     United States v. Carlos Canas
>         Criminal Docket No. 26-MJ-25

Dear Judge Henry:

The government respectfully submits this letter to request an order of detention pending trial for the defendant Carlos Canas, who is scheduled to appear before Your Honor for an initial appearance today at 2:00 p.m.  The defendant has been charged with a violation of 18 U.S.C. § 2252(a)(2) (distribution of sexually explicit content involving the use of a minor), after he uploaded to TikTok a nude and sexually explicit video of a 16-year-old (the "Minor Victim") without her consent.  The defendant's crime followed a two-year pattern of abuse toward the Minor Victim, in which the defendant repeatedly used threats and harassment to coerce her to send him nude videos and photographs of herself—a pattern that has continued as recently as the past two weeks.  The defendant is also a repeat offender, having previously been convicted of sexual misconduct (person has intercourse with another without consent) under New York law.  A statutory presumption applies that no condition or combination of conditions can reasonably assure the defendant's appearance or the safety of the community.  *See* 18 U.S.C. § 3142(e)(3)(E).  For these and the following reasons, the defendant should be detained pending trial.

I.      Background

        A.      The Defendant's Pattern of Abuse Toward the Minor Victim

The Minor Victim has made a series of reports to local police, stating that beginning in 2023, the defendant engaged in a pattern of abuse, coercion, and harassment toward the Minor Victim, who was 13 years old at the time.  The defendant, after finding the Minor Victim on a social media platform, began messaging her, flirting with her, and sending her sexually explicit photos of himself.  The Minor Victim told the defendant that she was underage,

and she asked him to stop, but the defendant continued.  In 2024, the defendant convinced the Minor Victim that he was in possession of a series of nude photographs and videos of her.  The defendant threatened to send these photographs and videos to the Minor Victim's family and friends if the Minor Victim did not comply with his demands—including demands that she send him even more nude photographs and videos.  Using this pattern of coercion, the defendant successfully obtained nude and sexually explicit photographs and videos of the Minor Victim.

The Minor Victim reports that in 2025, the defendant escalated his behavior, using threats of distributing nude photographs and videos of the Minor Victim to control her behavior.  The Minor Victim stated that the defendant would threaten her if she posted to social media, went out, or did not immediately text him back.

The defendant engaged in this pattern of coercion and control through multiple social media accounts that he created.  Subscriber and activity data that the government obtained for several of these accounts show that many of them were created and active for only a few days at a time—suggesting that the defendant created them with the express purpose of harassing the Minor Victim.  The data that the government obtained links many of these accounts to Internet Protocol ("IP") addresses associated with the defendant.  As for one of the accounts, subscriber data links the account directly to the defendant's telephone number—a telephone number that was listed for him in his apartment building's records and that is linked to one of his CashApp accounts.

In late 2025, according to the Minor Victim, the defendant's conduct escalated, as he began to tell the Minor Victim that he would "leak" her nude photographs and videos to others if she did not have sex with him.  According to the Minor Victim, the defendant told her, "Leak you tf okay and all the pics on a tree by the middle school you said you lived by add everyones tik tok facebook insta thats all post up by your high school idk tf".  In the following months, the defendant sent the Minor Victim multiple nude videos of himself masturbating, and he coerced the Minor Victim to engage in sexually explicit video chats with him.

In December 2025, the defendant followed through on his threats.  He posted, to the profile page of one of his TikTok accounts, a nude video of the Minor Victim.  The video showed the Minor Victim's face and included her exposing her breasts and genital area.  The display name of the TikTok account that the defendant used was "leak"—indicating that the defendant created this account explicitly to "leak" the nude content of the Minor Victim and following through on his above-referenced threats.

Activity data for this TikTok account, which the government obtained through legal process, shows that the video was uploaded using an IP address subscribed by the defendant's girlfriend and associated with the residence where the defendant was arrested this morning.  The same IP address also appears in one of the defendant's CashApp accounts, an account that contains his full name and links to a known telephone number and email address for him.

Following the Minor Victim's reports to local police, the Minor Victim permitted police to conduct an extraction of her cell phone.  One video found in the Minor Victim's phone extraction shows the defendant masturbating—clearly displaying his face.  In another video, an

2

adult male is masturbating without showing his face—but visible in this video is one of the social media usernames that the Minor Victim reported the defendant used to harass her. Activity data for this social media account shows more than 100 logins from the defendant's IP Address.

### B.   The Defendant's Abuse Toward Another Minor Victim

The defendant also targeted at least one other minor victim during this time. On the same day that the defendant uploaded a nude video of the Minor Victim to TikTok, the same TikTok account also uploaded, from the defendant's IP address, a nude video of another minor. Law enforcement reviewed this video, which shows this other minor victim's face. Law enforcement has determined that this other individual is also underage.

### C.   The Defendant's Ongoing Threats

In recent weeks, as the Minor Victim has stopped messaging or responding to the defendant, several anonymous accounts likely used by the defendant have continued to post comments on her social media pages. Two of these comments asked the Minor Victim why she had blocked him and said, "I still have your pics and vids lmaoo". Some of these accounts' usernames contained the name "Alex," which is the name that the defendant gave to the Minor Victim when they initially began messaging.

### D.   The Defendant's Prior Conviction

The charge in the complaint is not the defendant's first sex offense. According to a criminal history report, the defendant was, in 2015, convicted of Sexual Misconduct: Person Has Intercourse With Another Without Consent, pursuant to New York Penal Law § 130.20(1). At least one district court, relying on established Second Circuit precedent, has found that this conviction qualifies defendants for an enhanced mandatory minimum sentence of 15 years of imprisonment under 18 U.S.C. § 2252(b)(1). See 18 U.S.C. § 2252(b)(1) (providing for this mandatory minimum when a defendant has a prior conviction that "relat[es] to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward"); United States v. Keith, No. 15-CR-827 (AJN), 2017 WL 11683831, at *1 (S.D.N.Y. May 16, 2017).

### E.   The Defendant's Arrest and Search of His Residence

This morning, agents arrested the defendant and conducted a search of a residence that he shares with his girlfriend, pursuant to an arrest warrant and search warrant. In executing the search warrant, agents recovered multiple electronic devices that were attributed to the defendant, including a cell phone, tablet, laptop, hard drive, and memory card.

Also in the defendant's residence, agents found his passport. The defendant's passport however, is marked as "revoked" in a law enforcement database, which, the defendant explained to agents, is because he previously traveled overseas without first obtaining a sex-offender stamp in his passport, as he is required to. The defendant stated that as a result, he was instructed to surrender his passport, but he did not do so.

3

II.        Legal Standard

The defendant is charged with a violation of 18 U.S.C. § 2252(a)(2) (distribution of sexually explicit content involving the use of a minor), an offense that carries a statutory presumption of detention under the Bail Reform Act.  See 18 U.S.C. § 3142(e)(3)(E).  The Act states, specifically, that "[s]ubject to rebuttal by the [defendant], it shall be presumed that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" if the defendant's offense "involv[es] a minor victim" under, among other provisions, § 2252(a)(2).  Id.

To rebut this presumption, the defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight."  United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam).  If this burden of production is satisfied, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of evidence that the defendant presents a risk of flight.  Id.

The concept of "dangerousness" under the Bail Reform Act encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community."  United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (internal quotation marks omitted).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involves a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release.  See 18 U.S.C. § 3142(g).

The possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight.  See United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (explaining that the lengthy maximum combined term of imprisonment faced by the defendant "created potent incentives to flee"); United States v. Dodge, 846 F. Supp. 181, 184–85 (D. Conn. 1994) (explaining that the possibility of a "severe sentence" heightens the risk of flight); accord United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (finding that the defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means.  See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130–31 (2d Cir. 2000) (bail hearings are "typically informal affairs, not substitutes for trial or discovery").

4

III.    <u>Argument</u>

As stated above, a presumption in favor of detention exists for the defendant. *See* 18 U.S.C. § 3142(e)(3)(E).  The defendant will not be able to rebut this presumption, given the clear danger and risk of flight that he poses.

<u>First</u>, the weight of the evidence against the defendant is strong.  The Minor Victim's phone has been extracted, and the phone extraction contains a video of the defendant masturbating, with his face clearly in the frame.  The government has also obtained extensive data from the social media accounts that the defendant has used in furtherance of the charged conduct.  One of these accounts links directly to the defendant's telephone number—a number that is subscribed in his girlfriend's name and which the defendant listed on his apartment building records and CashApp account.  Other parts of the defendant's abusive activity— including his dissemination of the Minor Victim's nude content in December 2025—link back to him through multiple IP addresses, including ones registered to his residence, under his girlfriend's name, and used to access one of his CashApp accounts.

In a search warrant executed this morning, agents seized multiple devices from the defendant.  These devices are likely to contain further evidence of the defendant's crimes, likely including photos and videos of child victims, together with attribution evidence of the defendant's usage of the above-described social media accounts.

<u>Second</u>, the history and circumstances of the defendant, together with the nature and circumstances of the charged offense, also support detention here.  The defendant is a prior sex offender—already subject to forms of monitoring as part of a state sex offender registration program—and yet this monitoring failed to deter him from abusing and obtaining sex abuse material from at least two minors.  Indeed, the circumstances of the arrest and search this morning show that the defendant did not comply with at least one condition of his supervision of a sex offender, one which required him to obtain a stamp in his passport and, later, to surrender it.  Furthermore, the defendant is facing a significant mandatory minimum term of imprisonment for his crimes—15 years—a term far greater than any time that he has previously served, providing a strong incentive to flee.

<u>Third</u>, and finally, the danger that the defendant poses to the community is serious.  His pattern of abuse toward the Minor Victim escalated steadily over time, culminating in the dissemination of nude photos and videos of her.  His messages, including one described above, indicated that he knew where she went to school.  The defendant used information he knew about the Minor Victim, her family and her location—including where the Minor Victim went to school—to terrorize the Minor Victim over the course of years.  The defendant showed himself capable of creating multiple social media accounts rapidly, which could allow him to attempt to evade law enforcement in the future.  If released, there would also be no way of ensuring that the defendant does not obtain a new electronic device, access the internet, or continue to harass minor victims.  Indeed, the defendant appears to have abused more than one victim, and the government is still investigating whether there are other minors who have similarly been subject to the defendant's abuse.  Absent detention, the Court would have no way of ensuring these individuals' safety.

For all these reasons, the government respectfully requests that the defendant be detained pending trial.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/ _____
Daniel K. Amzallag
Assistant U.S. Attorney
(718) 254-6092